UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CLEMETEAN WILLIAMS, NAKIA HOLMES, TERRI GRIFFICE, JANET KHALIL, and CHRISTINA TAMAYO,** Individually and on Behalf of All Others Similarly Situated,<br><br>**Plaintiffs,**<br><br>**V.**<br><br>**BAY AREA REGIONAL MEDICAL CENTER, LLC and STEPHEN K. JONES, JR.**<br><br>**Defendants.** | C.A. NO. 4:18-cv-4819<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

### I. SUMMARY

1. Plaintiffs CLEMETEAN WILLIAMS, NAKIA HOLMES, TERRI GRIFFICE, JANET KHALIL, and CHRISTINA TAMAYO ("Plaintiffs") bring this suit as a collective action under the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA" or "the Act"), and as a Rule 23 class action asserting state law claims for unpaid straight-time compensation owed at a contractual hourly rate, on their behalf and on behalf of the members of the proposed classes defined herein joint and severally against Defendants Bay Area Regional Medical Center, LLC ("Bay Area") and Stephen K. Jones, Jr. ("Jones, Jr."), individually. Plaintiffs and class members worked as hourly paid Registered Nurses ("RN") (hereinafter referred to as "nurses" and/or "direct patient care nurses") at Bay Area Regional Medical Center, a medical facility located at 200 Blossom St., Webster, Texas 77598 (hereinafter referred to as "BARMC"). Plaintiffs and class members did not receive bona fide meal break periods. Instead, they were

required and permitted to work off-the-clock for Defendants during their meal break periods and were not paid for such time.

2. An employer is not required to pay an employee for meal periods if the employer can satisfy its burden of showing that the employee received a bona fide meal period. However, Defendants required nurses at BARMC to remain responsible for patient care throughout their shifts, including during meal periods. Nurses frequently went without meals, and even when they did attempt to eat, their meal periods were regularly interrupted by work demands. In short, Defendants used the nurses' meal periods for the predominant benefit of BARMC. Notwithstanding Defendants' practice of requiring nurses to be available for work and to in fact work throughout their meal periods, Defendants employed timekeeping software which automatically deducted half an hour from the total time worked by nurses each shift so as to account for these hypothetical meal periods, thereby enabling Defendants to receive the benefit of an additional 30 minutes of unpaid work for each shift worked by class members.

3. Defendants' practice of failing to relieve nurses of their duties during meal periods, while simultaneously using timekeeping software to automatically deduct half an hour from the total time paid per shift (on the pretext of accounting for meal periods which nurses were not in fact free to take without constant interruption), had the effect of depriving nurses of overtime compensation due to them under the FLSA in the weeks in which they worked more than forty (40) hours in a week, and of depriving them of straight-time compensation at their contractual hourly rate in weeks in which they worked fewer than forty (40) hours in a week. On information and belief, all of BARMC's non-exempt, direct patient care nurses were subjected to these illegal pay practices.

4. Plaintiffs bring this suit under the collective action provisions of the FLSA because they and the putative class members are similarly situated under the FLSA in the following

particulars: (a) they are or were hourly-paid direct patient care nurses subject to Defendants' hospital-wide policy of automatic pay deductions for meal periods; (b) they are and were required and permitted to be available to perform uncompensated work during those meal periods, and in fact did perform uncompensated work during those periods; (c) the meal periods are and were predominantly for the benefit of Defendants; and (d) Plaintiffs and class members suffered overtime wage losses as a result of Defendants' failure to pay wages at the federally required overtime rate for these half hour meal periods in the weeks in which the nurses worked more than forty hours in a week.

5. In addition to the FLSA collective action claims, Plaintiffs bring this action as a Rule 23 class action under Texas state law because they and the class members are similarly situated in the following particulars: (a) Plaintiffs and class members are or were hourly-paid direct patient care nurses who entered into employment agreements with Defendants pursuant to which Defendants promised to pay a specified hourly rate of pay for each and every hour worked by said nurses; (b) Defendants breached the employment agreements by failing to pay Plaintiffs and class members the agreed rate for all hours worked, specifically, by failing to pay for meal period work at the agreed hourly rate in the weeks in which class members worked 40 or fewer hours; (c) the mechanism by which Defendants shorted Plaintiffs and class members of their pay was by the use of timekeeping software to deduct a half hour from each shift worked by class members for a supposed "meal break" despite regularly requiring and permitting the nurses to perform compensable work during the unpaid "meal break"; and (d) Plaintiffs and class members do not and did not receive pay for such "meal break work" and were damaged thereby.

6. Accordingly, Plaintiffs are similarly situated to the following classes of employees:

3

**The FLSA Class:**

**Nurses employed at BARMC to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting a half hour from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

**The Rule 23 Class:**

**Nurses employed at BARMC to provide direct patient care at any time during the four years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting a half hour from each shift worked and not paying for same, did not receive all of the straight time pay at their contractual hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.**

## II. SUBJECT MATTER JURISDICTION & VENUE

7. This Court has jurisdiction over the FLSA claims under 29 U S.C. § 216 et seq. and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiffs' Texas state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts, namely, the loss of wages suffered by Plaintiffs and class members as a result of Defendants' policy of automatically deducting a half hour of meal break time from shifts worked while simultaneously requiring and permitting Plaintiffs and class members to work during said meal break time.

9. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants operate in the Southern District of Texas, and because the events giving rise to the claims plead in this action occurred in this judicial district.

4

## III. PARTIES & PERSONAL JURISDICTION

10. Plaintiff Clemetean Williams is an individual residing in Harris County, Texas. Plaintiff's written FLSA consent to be a party to this action is attached as Exhibit 1.

11. Plaintiff Nakia Holmes Jupiter is an individual residing in Fort Bend County, Texas. Plaintiff's written FLSA consent to be a party to this action is attached as Exhibit 2.

12. Plaintiff Terri Griffice is an individual residing in Galveston County, Texas. Plaintiff's written FLSA consent to be a party to this action is attached as Exhibit 3.

13. Plaintiff Janet Khalil is an individual residing in Galveston County, Texas. Plaintiff's written FLSA consent to be a party to this action is attached as Exhibit 4.

14. Plaintiff Christina Tamayo is an individual residing in Galveston County, Texas. Plaintiff's written FLSA consent to be a party to this action is attached as Exhibit 5.

15. Class Members are all of Defendants' current and former hourly-paid nurses who work or worked at BARMC during the time periods material to this suit, and who are due unpaid regular and/or overtime wages for compensable work performed during unpaid "meal breaks" as a result of Defendants' use of timekeeping software which deducted 30 minutes from each shift worked by class members.

16. Defendant Bay Area Regional Medical Center, LLC ("BARMC") is a Texas corporation located at 200 Blossom St, Webster, Harris County, Texas. Defendant may be served via service upon its registered agent for service, Monzer Hourani, 7670 Woodway, Suite 160, Houston, Texas 77063.

17. Defendant Stephen K. Jones, Jr. is a Texas resident that can be served with service at his principal place of business located at 6801 Emmett F Lowry Expressway, Texas City, Texas 77591.

## IV. FLSA COVERAGE

18. At all material times, Defendants Bay Area Regional Medical Center, LLC and Stephen K. Jones, Jr. have been employers within the meaning of Section 203(d) of the FLSA because they employed personnel to operate BARMC.

19. At all material times, Defendants Bay Area Regional Medical Center, LLC and Stephen K. Jones, Jr. have been an enterprise in commerce within the meaning of Section 203(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce through the operation of BARMC.

20. At all material times, Defendants Bay Area Regional Medical Center, LLC and Stephen K. Jones, Jr. have had an annual gross business volume in excess of $500,000 per year.

21. At all material times, Defendants Bay Area Regional Medical Center, LLC and Stephen K. Jones, Jr. have been an enterprise in commerce within the meaning of Section 203(s)(1)(B) of the FLSA because they are engaged in the operation of a hospital.

22. Defendant Stephen K. Jones, Jr. is the CEO of Bay Area Regional Medical Center, LLC.

23. Defendant Stephen K. Jones, Jr. controlled the nature, pay structure, and employment relationship of the Plaintiffs.

24. Further, Defendant Stephen K. Jones, Jr. had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

25. Additionally, Defendant Stephen K. Jones, Jr. was responsible for the day-to-day affairs of the business. In particular, he was responsible for determining whether the business complied with the Fair Labor Standards Act. For example, it was Stephen K. Jones, Jr. (and his

predecessor Mr. Tim Schmidt), who integrated and maintained the use of Spectralink Pivot software and devices that allowed Defendants' employees to communicate and report at all times including during unpaid meal breaks resulting in the FLSA violation alleged in this case.

26. As such, pursuant to 29 U.S.C. § 203(d), Defendant Stephen K. Jones, Jr. acted directly or indirectly in the interest of Plaintiffs' employment as their employer, which makes Defendant Stephen K. Jones, Jr. individually liable under the FLSA.

## V. FACTUAL BACKGROUND

### A. *FLSA AND TEXAS COMMON LAW WAGE VIOLATIONS FACTS*

27. Defendants operate BARMC, a medical facility located at 200 Blossom St., Webster, Texas 77598. BARMC offers a wide range of medical care services. It employs 24-hour specialized nursing care to ensure the health and well-being of each of its patients. To provide continuous medical services to its patients, BARMC employs over 400 physicians on the medical staff and over 500 employees dedicated to providing exceptional care to the Houston Bay Area.

28. Plaintiffs are RN's who worked for BARMC as a W-2 employees within the applicable statutory time periods. Plaintiffs agreed to provide their services as RN's in exchange for Defendants' agreement to compensate them at a specified hourly rate for each of their hours worked plus applicable shift differentials.

29. Plaintiffs and class members are regularly scheduled to work numerous twelve-hour shifts per week at BARMC. However, Plaintiffs and the class members have the option to pick up additional shifts, and frequently do so. Accordingly, Plaintiffs and class members regularly work more than 40 hours per week at BARMC.

30. Plaintiffs allege that in each and every week of their employment, **and as a result of a common policy equally applicable to them and to every member of the class,** Defendants (a) failed to pay them the agreed hourly rate for some of their work performed in those weeks in

which they worked forty (40) or fewer hours; and (b) failed to pay them at the time-and-one-half overtime rate required by federal law for some of their work performed in those weeks in which they worked more than forty (40) hours in a week. Specifically, they were not compensated at any rate whatsoever for thirty minutes of each of their twelve-hour shifts worked.

<u>Off-the-clock work: Uncompensated work during meal breaks.</u>

31. BARMC generated its payroll documentation for Plaintiffs and class members by using KRONOS software. The hours to be paid were tracked by timekeeping software which, on information and belief, was KRONOS timekeeping software. The timekeeping software was configured to deduct half an hour of time from each twelve-hour shift worked by the nurses. Each pay period, the amount of time tracked by the software, after deduction of half an hour per twelve-hour shift, was uploaded for processing into the KRONOS payroll processing software.

32. All of BARMC's hourly-paid direct patient care nurses are and were subject to Defendants' policy to automatically deduct one half hour per shift from the recorded time worked.

33. Plaintiffs anticipate that Defendants may attempt to argue that the half hour deductions from each shift worked were warranted so as to account for uninterrupted half hour lunch breaks during which no work was performed and for which no compensation is owed. In point of fact, however, Plaintiffs and their nurse colleagues routinely worked through their lunch breaks, and even when they did manage to spend a few minutes eating, that time was regularly interrupted by other nurses on duty, nurse managers, doctors, patients' families, and other BARMC staff.

34. Defendants are and were familiar with the demands of the health care industry in general and of providing medical services at BARMC in specific, and they deliberately chose to keep their labor costs down by staffing an insufficient number of personnel per shift. Rather than hiring and staffing a sufficient number of nurses per shift to allow the nurses to take full,

uninterrupted half hour meal breaks, Defendants required and permitted these overworked nurses to work during their meal breaks for the benefit of Defendants. Defendants knew and expected that Plaintiffs and class members would work through their unpaid "meal breaks," and this was in fact a daily occurrence at BARMC. Defendants' supervisors and management routinely interrupted the meal breaks of Plaintiffs and class members and made work demands upon them. Defendants' supervisors and management were actively involved in scheduling the shifts worked by Plaintiffs and the class, and they had actual knowledge that their staffing and work policies were causing Plaintiffs and class members to work through meal breaks to the predominant benefit of Defendants.

35. Plaintiffs and class members were not only required to remain at BARMC during their shifts, including during the supposed "meal breaks," they were expected to remain on their assigned floors/hallways so as to be able to respond to patient care needs at all times. Plaintiffs and class members were also required to respond to emergency calls at all times, including during any supposed "meal break." In short, far from ensuring that Plaintiffs and class members were completely relieved of work duties during the supposed "meal breaks," Defendants expected and required Plaintiffs and class members to attend to work demands throughout their shifts, including during any "meal break."

36. In that connection, Plaintiffs and class members were expected to complete orders on assigned patients, to answer calls, to respond to medical emergencies, to advise other staff on patient care and status issues, to answer questions from BARMC staff or family members, and in general to respond immediately to work demands during "meal breaks."

37. Defendants knew and/or had reason to know that Plaintiffs and class members performed work during their unpaid "meal breaks," as evidenced by Defendants requiring Plaintiffs and class members to remain at BARMC and on their assigned floors/hallways during

9

their shifts so as to be available to respond to work demands at any time during the shift, including during meal breaks. Moreover, Plaintiffs and class members performed work for Defendants during the unpaid meal breaks in plain sight of Defendants' management, quite often at Defendants' management's specific request.

38. Despite Defendants' actual knowledge that Plaintiffs and other class members worked during supposed "meal breaks," Defendants willfully failed to compensate Plaintiffs and class members for such work, electing instead to accept the benefits of the class members' work without compensating them for such work.

39. Given that Defendants' supervisors and managers knew from direct observation and from their general knowledge of BARMC's operations that Plaintiffs and class members (a) regularly worked through the deducted meal break time without compensation; and (b) regularly accumulated overtime hours even after deduction of the uncompensated half hour per shift (as evidenced by the fact that BARMC paid for overtime that still appeared in the timekeeping records even after deduction of the half hour per shift), Defendants had both actual and constructive knowledge that Plaintiffs and class members were not being compensated for meal periods worked at any rate whatsoever, much less at the agreed hourly rate or at the federally mandated time-and-one-half rate required for overtime.

### Calculation of FLSA and Texas Common Law damages.

40. Evidence reflecting the number of uncompensated meal break hours worked by each class member, as well as their applicable regular and overtime rate, is in the possession of Defendants. Actual damages can be calculated easily once Defendants have produced complete payroll records for the class. The absence of a bona fide meal break makes all meal break time compensable, and all that remains is to establish the number of shifts worked by class members in the weeks in which they worked more than 40 hours, and the number of shifts worked in which

they worked fewer than 40 hours. Each shift worked will entitle class members to half an hour of pay at either their usual hourly rate or at their time-and-one-half rate, depending upon whether the week in question is one in which forty or fewer hours were worked, or one in which forty or more hours were worked. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists right now in Defendants' timekeeping and payroll databases. The damage calculation itself will be a straightforward accounting process.

## VI. COLLECTIVE ACTION ALLEGATIONS
## VIOLATION OF 29 U.S.C. § 207 - OVERTIME

41.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

42.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of the members of the putative class.

43.     The action is filed on behalf of all of Defendants' hourly-paid direct patient care nurses who worked at BARMC during the three years preceding the filing of this action through entry of judgment in this case, whose overtime pay was docked pursuant to an automatic meal break deduction policy notwithstanding the fact that the nurses performed compensable work during the supposed meal break periods (the "FLSA Class").

44.     This FLSA Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is currently unknown to Plaintiffs, and although the data which would identify the size of the FLSA Class is within the sole control of Defendants, upon information and belief there are hundreds of nurses encompassed by the class, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

45. Plaintiffs will fairly and adequately protect the interests of the FLSA Class members and have retained counsel experienced and competent in the field of wage and hour law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with the interests of the members of the FLSA Class.

46. A collective action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to seek redress individually for the wrongs done to them. Management of the suit as a collective action will serve judicial economy.

47. Questions of law and fact common to the FLSA Class members predominate over questions that may affect only individuals because Defendants have acted on grounds generally applicable to all FLSA Class members. Among the common questions of law and fact common to Plaintiffs and other collective action class members are:

   a. whether Defendants employed class members in the manner that "employment" is understood and defined by the FLSA;

   b. whether Plaintiffs and the FLSA Class members were expected to and/or required to work during unpaid meal breaks, and in fact did so;

   c. Whether Defendants' control of the conditions of the "meal break" was for the predominant benefit of BARMC and whether it made such time compensable as a matter of law;

   d. whether Defendants failed to pay Plaintiffs and the FLSA Class members overtime compensation for some of their hours worked in excess of forty hours per workweek in violation of the FLSA, as a result of Defendants' automatic deduction of, and failure to pay for, a half hour meal break periods in each shift worked in weeks in which overtime hours were otherwise worked;

   e. whether Defendants' violations of the FLSA were willful as that term is understood in the context of the FLSA; and

  f. whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid overtime wages, liquidated damages, attorneys' fees and costs.

48. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

49. The FLSA 216(b) collective action class may be defined as:

**Nurses employed at BARMC to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting a half hour from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

## VII. TEXAS CLASS ACTION ALLEGATIONS

50. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

51. Pursuant to Fed.R.Civ.P. 23(a), (b)(2) and (b)(3) and 28 U.S.C. § 1367, Plaintiffs seek to prosecute their Texas state claims for breach of contract, quantum meruit and unjust enrichment as a class action on behalf of all hourly-paid direct patient care nurses who worked at BARMC at any time during the four years preceding the filing of this action through entry of judgment whose pay has been docked by application of an automatic meal break deduction to their shifts worked in the weeks in which they did not work overtime (the "Rule 23 Class").

52. This Rule 23 Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is currently unknown to Plaintiffs, and although the data which would identify the size of the Rule 23 Class is within the sole control of Defendants, upon information and belief there are hundreds of nurses encompassed by the class, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

53. Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class Members and have retained counsel experienced and competent in the field of contract,

13

compensation, and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with the interests of the members of the Rule 23 Class.

54. A class action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the Rule 23 Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to individually seek redress for the wrongs done to them. Management of this suit as a class action will serve judicial economy.

55. Questions of law and fact common to the Rule 23 Class predominate over questions that may affect only individuals because BARMC has acted on grounds generally applicable to all class members. Among the common questions of law and fact common to Plaintiffs and other members of the Rule 23 Class are:

    a. whether agreements existed pursuant to which Defendants were to pay an hourly wage to Plaintiffs and to members of the class for each hour of their work;

    b. whether Defendants failed to pay Plaintiffs and members of the class for all hours worked as a result of its automatic deduction of a half hour meal period per shift, notwithstanding the fact that Plaintiffs and class members regularly performed compensable work during such meal breaks;

    c. whether Defendants engaged in a continuing policy, pattern or practice of failing to pay Plaintiffs and the class members for all hours worked;

    d. whether Defendants breached and continue to breach the employment agreements between it and Plaintiffs and class members;

    e. whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid meal break time worked, attorneys' fees and costs.

56. Plaintiffs' claims are typical of the claims of the Rule 23 Class. Plaintiffs, like all other class members, were subject to BARMC's policy and practice of automatically deducting a half hour of pay per shift worked even though Plaintiffs performed compensable work throughout

their shift. Plaintiffs and each class member have been damaged and are entitled to recovery by reason of BARMC's policies and practices. Class action treatment will allow class members to litigate their claims in a manner that is fair to all parties involved, free of fear of retaliation, and efficient for those parties and for the judicial system.

57. The Rule 23 Class members are defined as:

> **Nurses employed at BARMC to provide direct patient care at any time during the four years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting a half hour from each shift worked and not paying for same, did not receive all of the straight time pay at their contractual hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.**

## VIII. DAMAGES SOUGHT

### A.  FLSA Collective Action Damages.

58. Plaintiffs and Collective Action Members are entitled to recover their unpaid overtime compensation.

59. Plaintiffs and Collective Action Members are also entitled to an amount equal to all of their unpaid overtime compensation as liquidated damages. 29 U.S.C. § 207 and 216(b).

60. Plaintiffs and Collective Action Members are also entitled to recover their attorney's fees and costs as provided for by the FLSA. 29 U.S.C. § 216(b).

### B.  Rule 23 Class Action Damages.

61. Plaintiffs and Rule 23 Class members are entitled to recover all damages incurred by them due to Defendants' breach of the employment agreements, specifically for a half hour of pay per shift worked in non-overtime weeks at their then-applicable contractual hourly rate.

62. Plaintiffs and Rule 23 Class members are also entitled to recover their attorney's fees and costs incurred in prosecuting their claims for damages due to Defendants' breach of their employment agreements.

63. Plaintiffs and Rule 23 Class members are also entitled to prejudgment and post-judgment interest.

## IX. PRAYER

A. <u>FLSA COLLECTIVE ACTION RELIEF — OVERTIME</u>

For the foregoing reasons, Plaintiffs respectfully requests judgment to be entered against Defendants awarding Plaintiffs and the FLSA Class members:

1. Overtime compensation for all unpaid overtime hours worked in excess of forty (40) in a week at the rate of one and one-half times their regular rates of pay;

2. An amount equal to the sum of the unpaid overtime compensation, as liquidated damages allowed under the FLSA;

3. Reasonable attorney's fees, costs and expenses of this action as provided for by the FLSA;

4. Pre-judgment and post judgment interest at the highest rates allowed by law on all damages; and

5. Such other and further relief, at law or in equity, to which Bazunu and the FLSA Class members may be entitled.

B. <u>RULE 23 RELIEF FOR STATE LAW CLAIMS</u>

Plaintiffs further respectfully request judgment to be entered against Defendants awarding Plaintiffs and the Rule 23 Class members:

1. Compensation for all unpaid hours worked in non-overtime weeks at their then-applicable hourly rates;

2. Reasonable attorney's fees, costs and expenses of this action;

3. Pre-judgment and post judgment interest at the highest rates allowed by law on all damages; and

4. Such other and further relief, at law or in equity, to which Plaintiffs and the Rule 23 Class members be entitled

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP

By: */s/ Todd Slobin*
Todd Slobin
Texas Bar No. 24002953
tslobin@eeoc.net
Ricardo J. Prieto
Texas Bar No. 24062947
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

&

KENNEDY HODGES, LLP

By: */s/ Galvin B. Kennedy*
Galvin B. Kennedy
gkennedy@kennedyhodges.com
Texas Bar No. 00796870
Federal ID No. 20791
4409 Montrose Blvd. Suite 200
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEYS FOR PLAINTIFFS
& CLASS MEMBERS